MARY G. BOUDREAU, administratrix, *vs.* BOAT ANDREA G. CORPORATION.

Essex.    January 4, 1966. — April 1, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Seaman. Vessel. Admiralty. Death. Jurisdiction,* Federal law, Death action. *Negligence,* Toward seaman, Vessel, Causing death. *Proximate Cause.*

The Federal courts have exclusive jurisdiction of proceedings under the Death on the High Seas Act, 46 U. S. C. (1958) § 761; and a cause of action under that act based on unseaworthiness of a vessel on which the decedent was employed cannot be joined in a State court with a cause

of action for the decedent's death under the Jones Act, 46 U. S. C. (1958) § 688. [475]

In an action against the owner of a vessel under the Jones Act, 46 U. S. C. (1958) § 688, for the death of a member of the vessel's crew, evidence that a defective heat regulator brought about a "terribly hot" and "stuffy" atmosphere in the pilothouse, that a door of the pilothouse was old, warped, and "very hard" to open, necessitating kicking it or pushing against it with the shoulder, that such conditions had existed for some time without being remedied, and that the decedent's death was causally connected with such conditions warranted a finding of negligence on the part of the defendant owner toward the decedent. [476–477]

Evidence that the atmosphere in the pilothouse of a vessel was "terribly hot" and "stuffy," that a door to the pilothouse was old, warped, and "very hard" to open, necessitating kicking it or pushing against it with the shoulder, and that the helmsman was found lying on the deck near that door and died the same evening, warranted an inference that he had left the pilothouse through that door to get relief from such atmosphere and, with certain medical evidence as to aggravation of a preëxisting heart trouble bringing about his death, warranted a finding of a causal connection between his death and the condition of the atmosphere in the pilothouse and the condition of the door. [478]

CONTRACT OR TORT. Writ in the Superior Court dated February 25, 1963.

The action was tried before *Ford*, J.

*David B. Kaplan* for the plaintiff.

*Solomon Sandler* for the defendant.

KIRK, J. The plaintiff, as administratrix of her husband's estate, brings this action against the owner of a fishing vessel on which the decedent, a crew member, died on November 13, 1962. The first count sounds in negligence under the Jones Act, 46 U. S. C. § 688 (1958). The second count alleges that the decedent's death was due to the unseaworthiness of the defendant's vessel and purports to be brought under the Death on the High Seas Act, 46 U. S. C. § 761 (1958). A third count, for cure and maintenance, is not before us.

The case was tried to a jury. At the close of the evidence, the judge, subject to the plaintiff's exception, directed a verdict for the defendant on both counts.

Before considering the merits, we deal with a jurisdictional question. It appears to be settled that "State and Federal courts have concurrent jurisdiction in actions to

recover under the Jones Act and general maritime law, but Federal principles of law apply.'' *Keough* v. *Cefalo,* 330 Mass. 57, 60. *Engel* v. *Davenport,* 271 U. S. 33, 37. It was intimated but not decided in *Bugden* v. *Trawler Cambridge, Inc.* 319 Mass. 315, 318, on which the plaintiff relies, that there may likewise be concurrent jurisdiction in State and Federal courts of actions under the Death on the High Seas Act. See *Choy* v. *Pan-American Airways Co.* 1941 A. M. C. 483 (S. D. N. Y.); *Ledet* v. *United Aircraft Corp.* 10 N. Y. 2d 258, 261. The prevailing opinion is now to the contrary, holding that exclusive jurisdiction under 46 U. S. C. § 761 (1958) is in the Federal court. *Higa* v. *Transocean Airlines,* 230 F. 2d 780 (9th Cir.). *Wilson* v. *Transocean Airlines,* 121 F. Supp. 85 (N. D. Cal.). *Devlin* v. *Flying Tiger Lines, Inc.* 220 F. Supp. 924, 928 (S. D. N. Y.). *Jennings* v. *Goodyear Aircraft Corp.* 227 F. Supp. 246 (D. Del.). *Gordon* v. *Reynolds,* 187 Cal. App. 2d 472, 477–478. See Chief Judge Desmond's dissent in *Ledet* v. *United Aircraft Corp.* 10 N. Y. 2d 258, 261–263. See also Edelman, 1 Maritime Injury and Death, 139 and Norris, Law of Seamen, 773. Compare Magruder and Grout, Wrongful Death within the Admiralty Jurisdiction, 35 Yale L. J. 395, 420, with Day, Maritime Wrongful Death and Survival Recovery: the Need for Legislative Reform, 64 Col. L. Rev. 648, 653–654 (fn. 15), 682; Note, 47 Cornell L. Q. 632, 634–636. See also Currie, The Silver Oar and All That: A Study of the Romero Case, 27 U. Chicago L. Rev. 1, 36–38. Although the point has not been definitively decided by the United States Supreme Court, the dictum in *Romero* v. *International Terminal Operating Co.* 358 U. S. 354, 369, 371, fns. 25 and 28, indicates that that court is in accord with the view that there is exclusive jurisdiction in the Federal courts under the Death on the High Seas Act. Since the latter act is not part of the general maritime law a cause of action under it may not be joined in a State court with a cause of action under the Jones Act as may be a cause of action under general maritime law for personal injury caused by unseaworthiness. See *Fitzgerald* v. *United States Lines Co.* 374 U. S. 16, 21; *Bono* v. *Ocean Wave, Inc. ante,* 470, 472.

It follows that the second count here which rests on the Death on the High Seas Act should be dismissed for want of jurisdiction.

We now consider the propriety of the judge's action in directing a verdict for the defendant on the count under the Jones Act, and for that purpose we summarize the evidence. About 6:50 P.M. on November 13, 1962, under moderate conditions of weather and sea, the vessel Andrea G. with a crew of six aboard, was approximately seventy miles offshore heading for fishing grounds. The decedent, hired as a deckhand, was making his first trip on the Andrea G. He was fifty-one years old and, at the time of his death, had four minor dependents. At the time stated the captain and members of the crew were aroused by a noise on the deck near the pilothouse. The decedent was found, apparently unconscious, lying on the deck with his right foot on the top step leading to the portside door of the pilothouse. Shortly before he had been "the man at the wheel." In response to the question by a seaman, "What happened here anyway?" the captain replied, ". . . I was in the bunk and I heard the commotion and it must have been . . . [the decedent] trying to get the door open." The pilothouse at the time was "terribly hot." A damp handkerchief belonging to the decedent was on the compass in the pilothouse.

The pilothouse was hot and stuffy because of a defective heat regulator which could not be shut off. In addition, the door on the portside of the pilothouse was old, warped, and not working properly. It was "very hard" to open and close. In order to get out of the pilothouse through the portside door, the door had to be kicked or be pushed with the shoulder. The condition had existed for some time. No repairs had been made when the vessel was last in port.

The custom and practice of fishing vessels sailing from Gloucester was that a valve be available to regulate the heat coming into the pilothouse and that doors of the pilothouse be free so that they could be quickly opened and closed.

Apart from medical testimony as to the cause of death, later to be discussed, we think that there was a case for the jury under the Jones Act. The rights of a seaman or his representative under the Jones Act are to be measured by Federal standards. *Keough* v. *Cefalo,* 330 Mass. 57, 60. These standards are established by the Federal Employers' Liability Act, 45 U. S. C. §§ 51–60 (1958) (FELA). The test is ''whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'' *Rogers* v. *Missouri Pac. R.R.* 352 U. S. 500, 506. The probative facts to establish negligence and causal relation may be presented through direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn. *Tennant* v. *Peoria & Pekin Ry.* 321 U. S. 29, 32. *Schulz* v. *Pennsylvania R.R.* 350 U. S. 523, 526. The ''liberal construction'' which should be given to the Jones Act (see *Cosmopolitan Shipping Co.* v. *McAllister,* 337 U. S. 783, 790, rehearing denied 338 U. S. 839) requires that the evidence be viewed most favorably to the seaman so that the jury, which, under the act, ''plays a pre-eminent role,'' may decide the issues. *Ferguson* v. *Moore-McCormack Lines, Inc.* 352 U. S. 521, 523.

Applying these standards, the jury could find from ''the direct statements of witnesses'' that the defendant was negligent in maintaining the heat regulator in and the door to the pilothouse. The jury also could fairly infer from the circumstances that the decedent was at the wheel in the pilothouse; that, in attempting to get relief from the ''terribly hot'' and ''stuffy'' atmosphere in the pilothouse caused by the defective heat regulator, he undertook to open the defective door with the extraordinary physical effort required; and that in doing so he was caused to fall and die.

We now refer briefly to the medical testimony mentioned earlier. After both parties had rested, the judge struck from the record the testimony of a doctor, called by the plaintiff, stating that he had an opinion as to the cause of

death, and the reasons for his opinion. Although we are somewhat puzzled by the order to strike the testimony, we do not dwell upon the point, since the judge did not strike from the record similar testimony by a doctor called by the defendant. The defendant's doctor testified while the plaintiff's doctor's testimony was still intact in the record. The question to and answer by the defendant's doctor on cross-examination incorporated by implication facts, circumstances and medical history dealt with in the interrogation of the plaintiff's doctor. The defendant's doctor testified, in substance, that he did not doubt that excessive heat and stuffiness, combined with heaving against a door that would not open, followed by falling to the deck after being "catapulted" from the pilothouse, could aggravate the decedent's preëxisting condition (of heart trouble) and cause his death. Under the applicable Federal standards this medical opinion was sufficient to permit the jury to determine the causal connection between the negligent conduct of the defendant and the death of the decedent. See *Ballard* v. *Forbes,* 208 F. 2d 883 (1st Cir.).

It follows that the plaintiff's exception as to count 1 is sustained. Count 2 is dismissed for want of jurisdiction.

*So ordered.*