269 So.2d 36 (1972)
POTASHNICK-BADGETT DREDGING INCORPORATED, Appellant,
v.
Alfred B. WHITFIELD, Appellee.
POTASHNICK-BADGETT DREDGING INCORPORATED, Appellant,
v.
TRANS-STATE DREDGING COMPANY, a Florida Corporation, Appellee.
Nos. 70-329, 70-330.
District Court of Appeal of Florida, Fourth District.
October 18, 1972.
*39 Reed A. Bryan, of McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, for appellant.
Alan R. Schwartz, of Horton & Schwartz, and Beckham & McAliley, Miami, for appellee-Alfred B. Whitfield.
E.S. Corlett, III, of Corlett, Meritt, Killian & Okell, Miami, for appellee-Trans-State Dredging Co.
CROSS, Judge.
We have consolidated the above appeals by appellant-defendant, Potashnick-Badgett Dredging, Inc., from final judgments entered in favor of appellee-plaintiff, Alfred B. Whitfield, and appellee-cross-defendant, Trans-State Dredging Company, in an action under Federal Maritime Law for damages for personal injuries. We affirm.
Defendant Potashnick-Badgett Dredging, Inc. (Potashnick), had been engaged to dredge a channel in the Gulf of Mexico and up to Florida Power Company's power plant on shore at Red Level, in Levy County, Florida. The purpose of the project was to provide access to the plant for barges and other boats carrying fuel for the plant. In connection with the operation, Potashnick had rented a floating *40 dredge and other items from cross-defendant Trans-State Dredging Company (Trans-State).
Plaintiff was employed as a mate on board the dredge. While the dredge was operating several miles out in the Gulf of Mexico, one of the dredge's discharge pipes became plugged with rocks. The procedure used to unplug the pipe was to lift one end of it by means of a cable in order to knock or flush out the material lodged therein. As the pipe was being lifted, the cable which was holding it parted, allowing the pipe to roll over onto plaintiff, injuring him.
Plaintiff then commenced actions against both Potashnick and Trans-State under federal maritime law.[1] Count I of the complaint alleged personal injuries proximately caused by the negligence of plaintiff's employer; Count II of the complaint alleged that plaintiff's injuries were caused by the unseaworthiness of the vessel; and Count III of the complaint sought the maritime remedy of maintenance and cure.
Defendant Potashnick answered the complaint, generally denying the allegations thereof, and asserting maritime law to be inapplicable and alleging plaintiff's sole remedy to be under Florida's Workmen's Compensation Act, through which plaintiff had already received benefits. The answer also set forth the affirmative defenses of contributory negligence and assumption of risk. In addition, Potashnick cross-claimed against Trans-State for indemnity.
Trans-State, in answer to Potashnick's cross-claim, asserted that the rental agreement for the dredge between Potashnick and Trans-State was a bare boat charter agreement.
Prior to trial, Trans-State moved for and was granted a summary judgment in its favor and against the plaintiff Whitfield.
The cause finally came on for trial, and at the conclusion of all the evidence, the trial court directed a verdict in favor of cross-defendant Trans-State as to Potashnick's cross-claim for indemnity, final judgment being subsequently entered for Trans-State. The trial court also directed a verdict in favor of plaintiff Whitfield against Potashnick on the issues that plaintiff was a seaman, and that the dredge was a vessel within the meaning of the term in maritime law. The issues as to negligence under the Jones Act, unseaworthiness, proximate cause, and damages were submitted to the jury. The jury returned a general verdict against Potashnick for $57,776.00 in favor of Whitfield, upon which the court entered final judgment. Potashnick then moved for a new trial, which was denied. These appeals followed.
We have for determination (1) whether the trial court erred in determining as a matter of law that plaintiff was a seaman,[2] (2) whether the court erred in determining as a matter of law that the rental agreement between Potashnick and Trans-State constituted a bare boat charter; and (3) whether the jury verdict in favor of plaintiff was excessive.
Initially, we point out that state courts can exercise jurisdiction over actions arising under the Jones Act and general maritime law, but federal principles of law control such actions and must be applied by both trial and appellate courts. Boudreau v. Boat Andrea G. Corp., 350 Mass. 473, *41 215 N.E.2d 907 (1966); Arundel Corp. v. Jasper, 219 Md. 519, 150 A.2d 415 (1959); cf. Atlantic Coast Line R.R. v. Barrett, 101 So.2d 37 (Fla. 1958).

I.
Turning now to the first issue, several criteria must be met before a maritime worker may properly be considered a seaman. First, the worker must be on board a "vessel." E.g., Swanson v. Marra Bros., Inc., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946). Second, the vessel must be in "navigation" or "plying in navigable waters." Swanson v. Marra Bros., Inc., supra; South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940). The third criterion is that the worker have a more or less permanent connection with the vessel. Wilkes v. Mississippi River Sand & Gravel Co., 202 F.2d 383 (6th Cir.1953). The fourth is that the worker be aboard "primarily to aid in navigation." Wilkes v. Mississippi River Sand & Gravel Co., supra.
It is clear that a dredge may, in appropriate circumstances, be held to fulfill the first requirement, that of being a vessel. E.g., Gahagan Constr. Corp. v. Armao, 165 F.2d 301 (1st Cir.1948) cert. denied 333 U.S. 876, 68 S.Ct. 905, 92 L.Ed. 1152; Chesser v. General Dredging Co., 150 F. Supp. 592 (S.D.Fla. 1957); Early v. American Dredging Co., 101 F. Supp. 393 (E.D.Pa. 1951). It is likewise clear that in order to be considered to be "in navigation" a vessel need not be in motion at the time in question, as long as it is performing its particular function in waters that are navigable.[3] McKie v. Diamond Marine Co., 204 F.2d 132 (5th Cir.1953). Being hired as a regular mate is sufficient to satisfy the third criterion.
The last requirement, that the worker be aboard primarily to aid in navigation, is satisfied if it can be shown that the capacity in which the worker was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or contributed to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips. Offshore Company v. Robison, 266 F.2d 769, 779 (5th Cir.1959).
Stated somewhat differently, the test of whether a given individual is or is not a seaman has been characterized as whether he is employed[4] on a vessel and is performing duties traditionally performed by seamen. E.g., Producers Drilling Company v. Gray, 361 F.2d 432 (5th Cir.1966). See also C. Gilmore & C. Black, The Law of Admiralty 282 (1957).
However, where the undisputed facts conclusively demonstrate that the individual concerned is or is not a seaman, the trial court may properly remove the issue from the jury's consideration by directing a verdict as to the individual's status. E.g., Producers Drilling Co. v. Gray, supra; Rotolo v. Halliburton Co., 317 F.2d 9, 12 (5th Cir.1963) cert. denied 375 U.S. 852, 84 S.Ct. 111, 11 L.Ed.2d 79; Stanley v. Guy Scroggins Constr. Co., 297 F.2d 374, 378 (5th Cir.1961); Thibodeaux v. J. Ray McDermott & Co., 276 F.2d 42 (5th *42 Cir.1960); Offshore Company v. Robison, supra, 266 F.2d at 778; cf. Atkins v. Greenville Shipbuilding Corp., 411 F.2d 279 (5th Cir.1969); McCown v. Humble Oil & Refining Co., 405 F.2d 596 (4th Cir.1969); Marine Drilling Co. v. Autin, 363 F.2d 579-580 (5th Cir.1966).
In the instant case, the material facts concerning plaintiff's status are undisputed. Plaintiff was an experienced barge worker. He was hired out of a union hiring hall at Crystal River, Florida, some thirteen days before the accident. Plaintiff lived on shore, as the dredge had no facilities for sleeping or eating. The dredge had no motive power of its own.
Plaintiff was employed as a mate on the dredge, earning $2.09 an hour, and working 8-hour shifts. His duties as a mate included overseeing the operation of two smaller derrick barges which were used in the dredging operation, moving the dredge's anchors when necessary, checking the shore lines and shifting spill pontoons when required. Apparently, plaintiff's duties also included helping to unstop the dredge's suction pipe when it became plugged with rocks or other material.
As stated above, at the time of the accident, the dredge was digging a channel several miles out from shore in the Gulf of Mexico. The suction pipe became plugged, and during the attempt to unplug it, the cable holding the pipe parted, allowing the pipe to roll onto plaintiff, crushing his foot, and allegedly causing hip and back injuries as well.
From the above, it is evident that the dredge in question was in fact a "vessel." McKie v. Diamond Marine Co., supra; Chesser v. General Dredging Co., supra; C. Gilmore & C. Black, supra at 30. The dredge was "in navigation," being in operation some miles out in the Gulf of Mexico, in waters 15-22 feet deep. Plaintiff did have a more or less permanent connection with the vessel, having been hired as a regular mate. His duties were primarily in aid of navigation, in the sense of contributing to the operation and welfare of the vessel. Likewise, it is evident that his duties included jobs traditionally performed by seamen.
The instant case is to be distinguished from Sikes v. Fort Myers Construction Company, 191 So.2d 265 (Fla. 1966), and Covington v. Standard Dredging Corp., 61 So.2d 644 (Fla. 1952). In both cases, dredge workers were determined by the Florida Supreme Court not to be seamen. However, in Sikes, the dredge was engaged in digging an overland canal through a residential area, which canal could by no stretch of the imagination be termed a navigable waterway; in Covington, the dredge was merely filling land to be used as a public park.
Appellant seeks to invoke the "doctrine of local concern" in support of its position that maritime law does not apply. Briefly, this doctrine states that where the project in question is of local, rather than national or interstate, concern, and a local remedy, such as state workmen's compensation acts, are available to the plaintiff, the cause does not sound in admiralty. See Fuentes v. Gulf Coast Dredging Co., 54 F.2d 69 (5th Cir.1961); Woods v. Merrill-Stevens Dry Dock & Repair Co., 14 F. Supp. 208 (S.D.Fla. 1936). However, this doctrine has been characterized as disfavored and apparently overruled by Gianfala v. Texas Co., 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955). Chesser v. General Dredging Co., supra. In any event, the doctrine's application here is highly doubtful, as the channel which was being dredged in the instant case was to be used in interstate commerce, for coal and other barges to deliver their cargo to the power plant.
The conclusion is therefore inescapable that the trial court's action in directing a verdict in favor of plaintiff on the issue of plaintiff's status as a seaman has not been shown to be erroneous. The evidence conclusively showed that plaintiff met the criteria set forth above, and the court properly *43 removed the issue from the jury's consideration.[5]

II.
The next issue for determination is whether the court erred in holding as a matter of law that the rental agreement between defendant Potashnick and cross-defendant Trans-State was a bare boat charter. As a consequence of this holding, the trial court determined that Potashnick alone was the warrantor of the seaworthiness of the dredge, and directed a verdict in favor of Trans-State as to Potashnick's cross-claim for indemnity.
A bare boat charter or demise is a maritime lease or rental agreement which, as opposed to a "time" or "voyage" charter, has the effect of shifting the possession and control of the vessel from the owner to the charterer, just as the shore-side lease of real property shifts many of the incidents of ownership from lessor to lessee. C. Gilbert and C. Black, supra at 215. The bare boat charterer is considered as the owner "pro hac vice," that is, owner for all practical purposes for the voyage or service stipulated. E.g., Leary v. United States, 81 U.S. (14 Wall.) 607, 610, 20 L.Ed. 756 (1871). The bare boat or demise charterer,
"... as owner, is the warrantor of seaworthiness of the vessel to seamen, who work aboard her, and ... he in consequence may be held liable for personal injuries suffered as a result of the breach of the absolute duty to provide a safe place to work and safe implements to work with. He is the `employer' for purposes of personal injury liabilities to seamen under the Jones Act, since the crew is hired by him. The vessel, so far as third persons are concerned, is his vessel, and the men are his men... ." (footnotes omitted) C. Gilbert & C. Black, supra at 218.
In determining whether a given rental agreement, or charter party, as it is termed in admiralty, is or is not a bare boat charter, the crucial test is one of control. If the owner retains control over the vessel, merely carrying the goods or providing the services designated, no bare boat charter exists. C. Gilbert & C. Black, supra at 217. To create a demise, the owner of the vessel must completely and exclusively relinquish possession, command, and navigation of the vessel to the charterer. Guzman v. Pichirilo, 369 U.S. 698, 700, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962). A presumption exists that a charter party is not a demise, and an owner who seeks to escape liability thereby has the burden of establishing that the charter was a demise. E.g., Guzman v. Pichirilo, supra; cf. Stevens v. Seacoast Company, 414 F.2d 1032 (5th Cir.1969).
It must be remembered that a charter party is merely a form of contract, and principles of construction applicable to ordinary commercial contracts apply in construing the terms of a charter party. E.g., Michael v. S.S. Thanasis, 311 F. Supp. 170 (N.D.Cal. 1970). Thus, the general rule applies that the construction and interpretation of a contract is usually an issue of law for the court and not for the jury, where the facts are undisputed. See Smith v. State Farm Mut. Auto. Ins. Co., 231 So.2d 193 (Fla. 1970).
In the instant case, the material facts concerning the charter party are not in dispute. The agreement provided that Potashnick was to hire the dredge and other items "on a bare boat rental basis." This terminology, while not of itself controlling, see 80 C.J.S. Shipping § 34, at *44 688, is indicative of the parties' intent, since both parties may be considered to have known the meaning of the term. The instrument provided that Potashnick was to hire a crew which was to be provided by Trans-State, and specified that one Captain Henry Sturm was to be in charge of the dredge. Potashnick was to pay for all repairs on the dredge, except that "major repairs to major equipment" was to be the responsibility of Trans-State. Terms specifying the payments to be made were also included.
In support of its contentions, appellant relies upon Constance v. Johnston Drilling Co., 422 F.2d 369 (5th Cir.1970); Delta Engineering Corp. v. Scott, 322 F.2d 11 (5th Cir.1963); and Pennsylvania R.R. Co. v. McAllister Lighterage Line, 240 F.2d 423 (2d Cir.1957) aff'g Pennsylvania R.R. Co. v. McAllister Bros., Inc., 137 F. Supp. 788 (S.D.N.Y. 1956). In Constance, the court held that a charterer, while liable to an injured seaman, was entitled to indemnity from the owner of the vessel. There, however, the skipper of the vessel was an employee of the owner, rather than the charterer, and the charterer was found to be only passively negligent. Here, the captain was paid by Potashnick. Also, while it is not set forth in the opinion, it appears that the court did not consider that a bare boat charter was involved.
The Delta Engineering case cited by Potashnick is factually dissimilar, in that the action was brought by an injured shipowner against his charterer and others. There, the charter was indisputably a time charter, and no question of the existence vel non of a bare boat charter arose. In the Pennsylvania R.R. Co. case, the court determined that the charterer of a vessel was entitled to indemnity from the owner. There, however, the owner had expressly obligated itself by the charter to make repairs on the vessel. The appellate court determined that the injury to the seaman in question was caused by a "clear failure upon the part of respondent [the owner] to keep the ship in repair as agreed."
From the above, it is concluded that no error has been shown as to the trial court's determination as a matter of law that the agreement constituted a bare boat charter. The instrument itself referred to the arrangement as being on a "bare boat rental basis." The evidence was undisputed that Potashnick paid the captain and crew, and that of the crew, plaintiff at least was hired near the job site as an employee of Potashnick. There was no evidence that Trans-State exercised any control over the operation of the dredge in any way. Potashnick's contention that the captain of the dredge was in reality an employee or agent of Trans-State is unsupported by the record.
No contention is made that, if the trial court's determination that a bare boat charter existed is correct, Potashnick would nevertheless be entitled to indemnity from Trans-State. The action of the trial court in directing a verdict in favor of Trans-State on the cross-claim, therefore, has not been demonstrated to be erroneous.

III.
Potashnick next contends that the jury award of $57,776.00 was excessive. In this type of case, as in any personal injury action, it has long been the settled rule that damages are for the discretion of the jury, and unless the amount awarded is clearly arbitrary or so excessive as to indicate that the jury was influenced by passion, prejudice, corruption or other improper motive, or is so much greater as to shock the judicial conscience, it will not be disturbed on appeal. E.g., Sproule v. Nelson, 81 So.2d 478 (Fla. 1955); Seaboard Coast Line R.R. v. McKelvey, 259 So.2d 777 (Fla.App. 1972); Sinclair Refining Co. v. Butler, 172 So.2d 499 (Fla.App. 1965).
In the instant case, plaintiff presented evidence that the injury had caused, and was continuing to cause, pain and suffering, not only in the foot, but also in his hip and back. This was supported *45 by medical testimomy. Plaintiff also presented evidence, which the jury was entitled to believe, as to inability to work and consequent diminution of income.
Without further lengthening an already overlong opinion, it is concluded that there was an adequate basis for the award.
Accordingly, appellant-defendant having failed to demonstrate error, the final judgments appealed are affirmed.
Affirmed.
REED, C.J., and MAGER, J., concur.
NOTES
[1] Jones Act, 46 U.S.C. § 688.
[2] A consequence of which foreclosed to defendant the defenses of contributory negligence and assumption of the risk. See The Jones Act, 46 U.S.C. § 688; Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. Likewise, it had the effect of entitling plaintiff to maintenance and cure, a maritime remedy whereby an injured seaman's employer pays the seaman's medical expenses and a specified daily amount until the seaman is able to resume work or his disability has been declared permanent. E.g., Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949).
[3] See United States v. Appalachian Electric Power Company, 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940), for a treatment of the question of what waters are navigable.
[4] "To maintain an action under the Jones Act the claimant must establish that at the time of the injury there existed between the seaman and the primary defendant the relationship of employee and employer. This requirement is based on the fact that the Jones Act, which refers to injuries sustained in the course of the seaman's employment, is specifically drawn to give seamen rights only against their employers." (footnotes omitted) Comment, Barge and Dredge Workers As Seamen Under the Jones Act, 32 Tul.L. Rev. 292. See also Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949); Roth v. Cox, 210 F.2d 76 (5th Cir.1954) aff'd 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260 (1955).
[5] In reviewing the grant or denial of a motion for a directed verdict, the appellate court must determine whether any evidence has been introduced by the non-moving party upon which the jury could lawfully find a verdict for that party. Ramsey v. Ivey, 184 So.2d 499 (Fla.App. 1966); Budgen v. Brady, 103 So.2d 672 (Fla.App. 1958).