342 So.2d 69 (1976)
CITY OF PLANTATION and Midland Insurance Company, Petitioners,
v.
Robert L. ROBERTS and Industrial Relations Commission, State of Florida, Respondents.
No. 47405.
Supreme Court of Florida.
December 22, 1976.
Rehearing Denied February 28, 1977.
*70 Edwin H. Underwood and Albert A. Gordon, Underwood, Gillis, Karcher, Reinert & Gordon, Miami, for petitioners.
Robert H. Gregory, Coral Gables, and Donald F. Harrington, Miami, for respondents.
HATCHETT, Justice.
Respondent Roberts was injured while operating a police launch in a canal within the corporate limits of petitioner city. Mr. Roberts was a policeman employed by petitioner, and was acting within the scope of his employment on July 19, 1973, when he was pelted with coconuts which five children threw at him from the canal bank. He filed a claim for workmen's compensation for injuries sustained from the coconuts. His claim was met with a motion to dismiss on the ground that the judge of industrial claims lacked jurisdiction. The theory of the motion was that unspecified federal law created a remedy for an injury of this kind, and also, even before the enactment of Section 440.09(2), Florida Statutes (1975), ousted state tribunals of jurisdiction over accidents occurring on navigable waters. The judge of industrial claims rejected this theory, without deciding whether the canal should be classified as navigable waters, and, on appeal, the Industrial Relations Commission affirmed the denial of the motion to dismiss. By petition for writ of certiorari, the city and its insuror bring the question here. We conclude that the judge of industrial claims properly exercised jurisdiction and deny the petition for writ of certiorari.
As a policeman employed by petitioner city, respondent's principal duties were those of a radar officer in the traffic division. In addition, respondent was one of "about eleven people that" operated the police launch "from time to time. Whoever happened to be available, and knew anything about operating the outboard would get it." (T 23). On this basis, respondent had manned the outboard motorboat on 12 to 15 occasions in the course of more than two and a half years' employment by the police department (which was preceded by two years in the police reserves). Respondent Roberts was out in the police launch alone, investigating a sunken boat, when he was injured.
The city relies on Atlas Iron and Metal Co. v. Hesser, 177 So.2d 199 (Fla. 1965), in arguing that the judge of industrial claims had no jurisdiction over respondent's claim. The Atlas Iron and Metal Co. case arose out of an accident which occurred while the employee Hesser was engaged in converting certain naval landing *71 craft into barges for civilian use. The vessels were afloat on navigable waters, moored in a canal. Hesser spent a substantial portion of his working day on land but was aboard ship when he was injured. The question for decision was whether Hesser was entitled to workmen's compensation benefits or whether he was covered by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 903 et seq., and the Court decided that he was entitled to the benefits of the federal legislation, and therefore not entitled to benefits afforded by the Workmen's Compensation Law. Section 440.01 et seq., Florida Statutes (1975). The holding in Atlas Iron and Metal Co. v. Hesser, supra, rests on the exclusivity provision of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905, and does not control here because the claimant in the present case has no possibility of recovery under the Longshoremen's and Harbor Workers' Compensation Act,[1] which specifically excludes from its coverage any "officer or employee ... of any State ... government, or of any political subdivision thereof." 33 U.S.C.A. § 903(a)(2) as amended 1972.
The present case resembles more closely the case of Sikes v. Fort Myers Construction Co., 191 So.2d 265 (Fla. 1966), in which a tugboat operator was injured while securing a fuel barge to a dredge. The dredging operation was part of the creation of a series of canals in what was to become a residential development. The Court distinguished the Atlas Iron and Metal Co. case in these words:
Both Atlas Iron and Metal Co. and Calbeck [v. Travelers Insurance Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962)] dealt with the problem of whether a state workmen's compensation act or the Federal Longshoremen's and Harbor Workers' Act was controlling. Here the dispute concerns the problem of the applicability of the Florida Workmen's Compensation Law or the Jones Act. There are many differences between the Jones Act and the Longshoremen's Act, the chief of them being that the former necessitates proof of negligence for recovery, while the latter is a compassionate statute from which much of our Workmen's Compensation Act was drawn. The jurisdictional aspects of the two federal acts also differ; therefore Atlas Iron and Metal Co. cannot be decisive in the case sub judice. 191 So.2d at 266 (footnotes omitted)
The Sikes court then noted that the Jones Act, 46 U.S.C. § 688,[2] conferred a cause of action only on "any seaman" and declared that Sikes was not a seaman because "the `ship' was a dredge[3] ... [and Sikes] slept and took his meals on shore and was paid on an hourly basis." 191 So.2d at 266. The Sikes decision established as a matter *72 of Florida law that workmen's compensation benefits were available to an otherwise eligible workman, who sustained an injury in a man-made canal communicating with navigable waters, so long as the accident fell outside the purview of the Longshoremen's and Harbor Workers' Compensation Act and the workman did not qualify as a "seaman" within the meaning of the Jones Act.[4] Subsequent decisions of this Court have in no way eroded the authority of the holding in Sikes v. Fort Myers Construction Co., supra, in this regard.
It is therefore appropriate to consider whether respondent Roberts is a "seaman" within the intendment of the Jones Act.[5] The master of a vessel, no less than the crew he commands, may be a "seaman" within the meaning of this Act. South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940). But in order to qualify as a "seaman" under the Jones Act, a person must be more or less permanently attached to the vessel. Owens v. Diamond M. Drilling Co., 487 F.2d 74, reh. den., 487 F.2d 1401 (5th Cir.1973); Dugas v. Pelican Const. Co., 481 F.2d 773 (5th Cir.1973) cert. den. sub nom., 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550; McKie v. Diamond Marine Co., 204 F.2d 132 (5th Cir.1953). A recent decision of the United States Court of Appeals for the Fifth Circuit, Brown v. ITT Rayonier, Inc., 497 F.2d 234 (1974), bears importantly on the question whether respondent Roberts should be viewed as a seaman within the meaning of the Jones Act.
An employee of a paper mill whose "primary duties were to take samples of wood pulp within the plant and to conduct certain tests" Brown v. ITT Rayonier, Inc., 497 F.2d at 235, was also assigned the job of going more than 20 miles down-river from the plant site "in a 17-foot outboard motorboat," id., to take samples from the river as part of a pollution monitoring program. On one such outing he was injured. When he brought suit under the Jones Act, the Fifth Circuit held he was not a "seaman":
The basic test used in this circuit for determining crew member status is that stated in Offshore Co. v. Robison, 5 Cir., 1959, 266 F.2d 769, at 779:
`there is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.' *73 See Dugas v. Pelican Construction Co., 5 Cir., 1973, 481 F.2d 773; Ross v. Mobil Oil Corp., 5 Cir., 1973, 474 F.2d 989; Keener v. Transworld Drilling Co., 5 Cir., 1972, 468 F.2d 729; Labit v. Carey Salt Co., 5 Cir., 1970, 421 F.2d 1333; Thomas v. Peterson Marine Service, Inc., 5 Cir., 1969, 411 F.2d 592; Rotolo v. Halliburton Co., 5 Cir., 1963, 317 F.2d 9; Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523.
* * * * * *
In the present case we confront a ... situation .. . in which the injured worker was aboard the vessel while it was in transit, and in which he was aboard strictly for the purpose of aiding in its navigation. Albeit his duties aboard would be brief, and his principal duties with his employer were on shore, he was at the time of his injury performing tasks that could only be performed while the vessel was under weigh and which, unlike services performed by shore-based workers upon docked vessels, were directly a part of the vessel's navigational mission.
* * * * * *
Nonethless, we conclude that the Robison-McKie test is properly applied here to deny status as a crewman. In part we base our conclusion on Dugas v. Pelican Construction Co., supra, and Cox v. Otis Engineering Co., supra. While these opinions do not address themselves to the issue raised before us, they do deny crew member status to drill barge employees who apparently performed work directly involved in the drilling mission. In each instance, the basis of the decision was the temporary, albeit operational, relationship with the vessel. 497 F.2d 236-238.
The conclusion to be drawn from cases like Brown v. ITT Rayonier, Inc., supra, is that the circumstances in which respondent Roberts sustained his injuries make a less compelling case for the applicability of the Jones Act than the circumstances which obtained in Sikes v. Fort Myers Construction Co., supra. For that reason, we perceive no state law[6] obstacle to the award of compensation in this case.
Remaining for consideration is the question whether federal law, constitutional or statutory, precludes the relief respondent seeks.[7] Workmen's compensation laws were originally enacted, with the expectation that their applicability would extend beyond the water's edge. Alaska Pacific S.S. Co. v. Pillsbury, 174 Cal. 389, 163 P. 204 (1917); Kennerson v. Thames Towboat Co., 89 Conn. 367, 94 A. 372 (1915); Lindstrom v. Mutual S.S. Co., 132 Minn. 328, 156 N.W. 669 (1916). The United States Supreme Court, however, saw a threat to shipping in the sheer number of laws to which ships, especially coastwise vessels, could be subjected. *74 In Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), the Court reversed an award under New York's workmen's compensation act, saying:
If New York can subject foreign ships coming into her ports to such obligations as those imposed by her Compensation Statute, other states may do likewise. The necessary consequence would be destruction of the very uniformity in respect to maritime matters which the Constitution was designed to establish; and freedom of navigation between the states and with foreign countries would be seriously hampered and impeded. 244 U.S. at 217, 37 S.Ct. at 529.
The Court's concern for unimpeded navigation has never required a blanket suspension of workmen's compensation statutes in every case of maritime injury, however. In Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922), a shipwright was injured while working on a vessel which was under construction but already launched and afloat on navigable waters. The Court upheld an award of state workmen's compensation benefits to Rohde because he and his employer "contracted with reference to the state statute; their rights and liabilities had no direct relation to navigation, and the application of the local law [could not] materially affect any rules of the sea whose uniformity is essential." 257 U.S. at 477, 42 S.Ct. at 158. Respondent Roberts' police work has a more attenuated connection with maritime commerce than did the work of the shipwright Rohde. Here, as in Grant Smith-Porter Ship Co. v. Rohde, supra, "the parties contracted with reference to the state statute" 257 U.S. at 477, 42 S.Ct. at 158. Mr. Roberts' injury was "local in character, though maritime in nature." Calbeck v. Travelers Ins. Co., 370 U.S. 114, 133, 82 S.Ct. 1196, 1207, 8 L.Ed.2d 368 (1962) (Stewart, J., dissenting). See Grant Smith-Porter Ship Co. v. Rohde, supra; Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921). The reasoning of these and other cases which delineate the constitutional boundary between the admiralty jurisdiction and the realm of state law supports the conclusion that the present case falls well within the permissible area of state regulation.
Neither is there any federal statutory impediment to the grant of workmen's compensation benefits in this case. Unlike the Longshoremen's and Harbor Workers' Compensation Act, see 33 U.S.C. § 905, the Jones Act has no provision rendering inoperative state laws which create parallel remedies. Even in the event that respondent Roberts has a claim under the Jones Act, therefore, nothing prevented his applying for benefits under our Workmen's Compensation Law. Similarly, Mr. Roberts was free to proceed in the manner he chose, notwithstanding the possibility of a claim for maintenance and cure under general admiralty principles. See Potashnick-Badgett Dredging, Inc. v. Whitfield, 269 So.2d 36 (Fla. 4th DCA 1972).
Accordingly, the petition for writ of certiorari is denied.
ADKINS, BOYD and ROBERTS (Retired), JJ., concur.
ENGLAND, J., dissents with an opinion with which OVERTON, C.J., and SUNDBERG, J., concur.
ENGLAND, Justice, dissenting.
The petition we have before us seeks more than a rejection of Roberts' compensation claim; it seeks to establish stability in the law by setting lines of demarcation between Florida's Workmen's Compensation Act,[1] the federal Longshoremen's and Harbor Workers' Compensation Act,[2] and the Jones Act.[3]
Robert Roberts was an employee of the City of Plantation Police Department who was injured while alone on a patrol boat in an inter-city canal approximately 30 to 50 *75 feet wide. The particular canal in which this occurred leads to the ocean, ebbs and flows with the tide, and is generally navigated by various vessels, although larger ones await high tide.
The City of Plantation defended against Roberts' claim on the theory that, under Florida and federal jurisprudence, workmen's compensation benefits are not available for accidents occurring on navigable waters.[4] The Judge of Industrial Claims determined that he had jurisdiction without regard to the navigability of the canal and awarded compensation. The Industrial Relations Commission affirmed.
The respective positions of the parties here are simply stated. Roberts asserts that he was an employee in Florida injured in the course of his employment, and that Florida's workmen's compensation law was designed to provide benefits for him irrespective of whether he happened to be performing land-based or water-based police duties. He correctly states that the statute did not bar the claims of employees performing maritime duties at the time of his injury,[5] and he asserts that a denial of benefits would be illogical in a state with the extensive waterways and shorelines which are present in Florida.[6]
The City of Plantation argues that if an injury occurs on navigable waters, the Bureau of Workmen's Compensation has no jurisdiction and the matter there ends. It asserts that the policy behind this approach is legal certainty  the continuation of a principle which has evolved over years of litigation in this area in the state and federal courts and which denies injured employees nothing except the opportunity to forum-shop.
It is clear from the record of this proceeding that the canal on which the injury occurred was a navigable waterway.[7] Roberts does not assert otherwise. In my view, that fact is conclusive of this proceeding under existing law, barring the Bureau and the Commission from assuming jurisdiction over his claim.
In 1917 the United States Supreme Court ruled that the states were without power to bring maritime employees injured on navigable waters within the coverage of their workmen's compensation statutes.[8] Since then, the courts of this nation have been grappling with the difficult problem of drawing the line between the respective realms of state and federal power to provide compensation coverage. The judicial labor expended in this effort has created a tortuous history,[9] periodically complicated by the intrusion of nebulous federal constitutional doctrines which have excused state infringement of the superior admiralty jurisdiction of the federal government where the intrusion was not of a serious nature. *76 The first of these was the "local concern doctrine", permitting state compensation coverage to apply where the employment relationship had no direct relevance to navigation or commerce.[10] After passage of the Longshoremen's Act, there developed the "twilight zone rule" which raised a rebuttable presumption of coverage before the tribunal first chosen by the claimant.[11] These doctrines evolved from a bias in favor of state coverage, premised on an understandable desire to allow employees a prompt recovery of benefits sought.
For a time these doctrines were essential because many employees were beyond the remedial scope of any statutory scheme, regardless of the merits of their cause. A high price was paid by the judicial system, however, in this pursuit of a benevolent system. Endless litigation of jurisdictional issues occurred because
"No dependable definition of the area  described as `maritime but local,' or `of local concern'  where state laws could apply ever emerged from the many cases which dealt with the matter in this and the lower courts. The surest that could be said was that any particular injury might be within the area of `local concern', depending upon its peculiar facts."[12]
The gap was closed in 1962 when the United States Supreme Court announced that the Longshoremen's Act covered all injuries on navigable waters, whether the employee was water or land-based. Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962).[13]
Recognizing the import of Calbeck, this Court unanimously determined in Atlas Iron and Metal Co. v. Hesser, 177 So.2d 199 (Fla. 1965), that Florida's workmen's compensation act did not cover injuries occurring on navigable waters even though a substantial portion of the employee's duties were performed on land. By so holding, this Court settled on a precise line of demarcation between the state and federal spheres which has prevented endless litigation from burdening our court system and delaying the award of deserved benefits. Roberts now asks us to abandon this simplified system. He suggests that the Court receded from Atlas in Sikes v. Fort Myers Construction Co., 191 So.2d 265 (Fla. 1966), at least when the state's jurisdiction is pitted against the Jones Act. While a divided Court in Sikes did indeed distinguish Atlas as involving the more beneficent federal Longshoremen's Act, the distinction affords no comfort to Roberts in this case. The Sikes court analyzed the claimant's status as a "seaman" under the Jones Act to determine whether pre-emption occurred notwithstanding the fact-finder's ruling in favor of Florida's jurisdiction because the injury did not occur on navigable water. A two-tier analysis was developed in Sikes, but does not control here. Unlike Sikes this case is neither a controversy regarding the place of injury  on navigable waters  nor an assertion that the Longshoremen's Act does not provide Roberts coverage, perhaps equivalent to or greater than that provided in our act.
I can understand the Court's desire to uphold the award Roberts has already received under our statute. I cannot, however, for that reason agree to return to the spasmodic and episodic demarcation between federal and state jurisdiction which preceded the Calbeck decision.
Finally, I do not share the majority's concern that Roberts will not be compensated at all because he is not covered under the Longshoremen's and Harbor Workers' Compensation Act. Admittedly, that act contains an exclusion for employees of the *77 state and its "political subdivisions," but I do not believe the City of Plantation is within that exclusion. In Florida municipalities are not "political subdivisions", Article 8, Section 1(a), Florida Constitution, and federal courts in the past have indicated a willingness to apply state law to a federal definition of that term. See In re Fort Lauderdale, 23 F. Supp. 229 (S.D.Fla. 1938).
OVERTON, C.J., and SUNDBERG, J., concur.
NOTES
[1] This proposition is disputed in dissent on the authority of the Florida Constitution and In re Fort Lauderdale, 23 F. Supp. 229 (S.D.Fla. 1938). The question whether respondent Roberts is excluded from coverage under the Longshoremen's and Harbor Workers' Compensation Act is a question of federal, not state, law, see Bagrowski v. American Export Isbrandtsen Lines, Inc., 440 F.2d 502 (7th Cir.1971), and has nothing to do with bankruptcy proceedings.
[2] This section provides, as follows:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in the case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.
[3] Earlier in the Sikes opinion, the Court said that the dredge was not "self-propelled but must be moved from place to place by a tug... . The claimant had begun work as a dumphand or common laborer, but had acquired the status of tugboat operator at the time of his injury." 191 So.2d 265.
[4] It is immaterial that another court might have concluded that Sikes had a claim falling within the admiralty jurisdiction, because of Sikes' "status of tugboat operator at the time of his injury." 191 So.2d at 265. Whether Sikes was entitled to workmen's compensation benefits was a question of state law. Sikes' entitlement to such benefits, like that of respondent Roberts in the present case, is a question that is analytically independent of the Jones Act. For cases arising after October 1, 1974, however, the legislature has made the question whether the Jones Act applies determinative of whether workmen's compensation benefits are available. Ch. 74-197 § 3 has created Section 440.09(2), Florida Statutes (1975), to provide:

No compensation shall be payable in respect of the disability or death of any employee covered by the Federal Employer's Liability Act, the Longshoremen's and Harbor Worker's [sic] Compensation Act, or the Jones Act.
[5] To deny workmen's compensation benefits, on the ground that a claimant could sue under the Jones Act, would be to take the Sikes decision one step further, albeit in a direction indicated by obiter dicta in that case. The fact that the legislature did take this additional step, by enacting Section 440.09(2) after the injury with which we are concerned was inflicted, is of ambiguous significance. While it is open to Mr. Roberts to argue that the legislature acted in order to effect a change in existing law, the city can answer that the enactment was nothing more than the codification of case law. For a case in which an injured workman received workmen's compensation benefits and also recovered a judgment under the Jones Act, see Potashnick-Badgett Dredging, Inc. v. Whitfield, 269 So.2d 36 (Fla. 4th DCA 1972).
[6] See ante, p. 72 n. 4.
[7] Only if the injury occurred on navigable waters is there even arguably a federal issue as to whether state compensation benefits are available. The evidence produced before the Judge of Industrial Claims showed that the canal was 30 feet in width, that the land under the canal was owned by the adjoining home owners, and that a 25-foot boat could not navigate the length of the canal except at high tide.

In Perry v. Haines, 191 U.S. 17, 26, 24 S.Ct. 8, 10, 48 L.Ed. 73 (1903), the United States Supreme Court, quoting from The Daniel Ball, 77 U.S. 557, 10 Wall. 557, 19 L.Ed. 999, said:
"[T]hose rivers must be regarded as public navigable rivers in law, which are navigable in fact," and that "they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form, in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is, or may be, carried on with other states or foreign countries, in the customary modes in which such commerce is conducted by water."
Under Florida law, navigable waters are defined as:
Navigable waters of the United States may be defined as the high seas and such lakes and streams as are navigable in fact, and which by themselves or in connection with other waters form or afford a continuous channel or highway for commerce among the states or with foreign countries, or which may be made available for such purposes at reasonable cost.
29A Fla.Jur. Ships and Shipping, § 5; 26 Fla.Jur. Public Lands, § 39; Clement v. Watson, 63 Fla. 109, 58 So. 25 (1912).
[1] Chapter 440, Fla. Stat. (1975).
[2] 33 U.S.C. § 901 (1976).
[3] 46 U.S.C. § 688 (1976).
[4] It is irrelevant to this controversy that the injury-inflicting coconuts were thrown from the shore. The law is well settled that where a person on board a vessel is injured by a land-based instrumentality the point of impact determines the place of injury. Minnie v. Port Huron Terminal Co., 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631 (1935).
[5] The 1974 Legislature has now barred coverage under the act for employees covered by the Federal Employers' Liability Act, the Longshoremen's and Harbor Workers' Compensation Act, or the Jones Act, effective October 1, 1974. Section 440.09(2), Fla. Stat. (1975).
[6] Roberts argues that a denial of benefits to him would affect numerous other policemen and state employees, including for example marine-based employees of the Game and Fresh Water Fish Commission and Department of Transportation employees who use boats to construct and repair bridges over the navigable waters of the state. Since Roberts is not an employee of the state or one of its political subdivisions, we need not address the status of these others. As regards other employees, it appears that the Legislature has now addressed that policy argument. See footnote 5, above.
[7] United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940); Perry v. Haines, 191 U.S. 17, 24 S.Ct. 8, 48 L.Ed. 73 (1903); I Benedict on Admiralty, § 44 at p. 94.
[8] Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).
[9] The development of this area of law is recounted in 3 A. Larson, The Law of Workmen's Compensation, §§ 89 and 90 (1973).
[10] See, Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922).
[11] See, Davis v. Dep't of Labor & Indus., 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942).
[12] Calbeck v. Travelers Ins. Co., 370 U.S. 114, 119, 82 S.Ct. 1196, 1199, 8 L.Ed.2d 368 (1962).
[13] An exception exists where the injured employee is a "seaman" covered by the Jones Act and has a more extensive admiralty right to "maintenance and cure". Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931 (1944).