ROBERT P. SMITH, Jr., Judge.
The workers’ compensation insurance carrier for appellee Griffith Ranch, Inc. appeals a deputy commissioner’s order finding that Robert Barrett’s death was compensa-ble under Chapter 440 and that coverage was not excluded by Section 440.09(2), Florida Statutes (1977), as amended by Chapter 74-197, § 5, Fla. Laws, providing:
No compensation shall be payable in respect of the disability or death of any employee covered by the Federal Employer’s Liability Act, the Longshoremen’s and Harbor Worker’s Compensation Act, or the Jones Act.
Barrett died of a heart attack triggered by an electrical shock while he was working barefoot in the damp bilge of his employer’s 44-foot, 18 ton yacht “Esmeralda,” of Bahamian registration, which lay at anchor in Marsh Harbor, Bahamas. The yacht was used for entertainment in the employer’s cattle business. Barrett’s usual work place was at Griffith Ranch in Okeechobee County, but on this occasion, as on 25 to 50 other such occasions in the four previous years, Barrett had been dispatched by his employer to repair the “Esmeralda.”
The question is whether Barrett was an employee covered by the federal Jones Act, 46 U.S.C. § 688, at the time and place of his death arising out of and in the course of his Florida employment. If so, Section 440.-09(2) apparently excludes Chapter 440 workers’ compensation coverage even though, for want of proof of employer negligence, Barrett’s widow might well be denied Jones Act benefits.[1] There is no color-able argument that Barrett was covered by the federal Longshoremen’s and Harbor Workers’ Compensation Act, 33 U.S.C. § 901, which applies only to disability or death resulting from injury occurring “upon the navigable waters of the United States,” assuredly excluding waters of the Bahama Islands. 33 U.S.C. § 903(a). Cf. Hernandez v. Mike Cruz Machine Shop, 389 So.2d 1251 (Fla. 1st DCA 1980).
In years past the mutual exclusivity of State-sponsored workers’ compensation remedies and federal maritime remedies, such as the present Jones Act remedies for seamen injured or killed as a result of employer negligence, was the product of federal judicial decisions protecting the maritime jurisdiction of the United States. See Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); City of Plantation v. Roberts, 342 So.2d 69, 75 (Fla.1976); and Hunt v. Basil E. Kenney Lumber Co., 141 Fla. 842,194 So. 366 (1940). That exclusivity has since been judicially relaxed as the result of various influences, notably the rather compelling realization, aptly portrayed in Larson’s informative discussion,[2] that
[I]f a gap is left between the Jones Act and state compensation acts, the claimant may get nothing — as when the widow and children of a worker instantly killed without employer negligence find that they have no Jones Act remedy, no maintenance and cure, and — if too strict a line is drawn, say, as to land-based “seamen” killed on a landward errand — no workmen’s compensation.
The “local-concern or maritime-but-local doctrine”[3] and the “Jones Act-state compensation twilight zone”[4] are federally crafted rationales for tolerating possible overlaps in coverages, the result of successive awards by state and federal tribunals, in preference to tolerating no award at all. If this case were governed solely by those *995 “nebulous federal constitutional doctrines which have excused state infringement of the superior admiralty jurisdiction of the federal government where the intrusion was not of a serious nature,”[5] we should find Chapter 440 coverage in this case for the reasons expressed by the Plantation majority, 342 So.2d at 74: Barrett and his employer contracted with reference to Florida Chapter 440; their rights and liabilities had no direct relation to navigation; and applying the Florida compensation law could not materially affect any “rules of the sea whose uniformity is essential.” Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 477, 42 S.Ct. 157, 158, 66 L.Ed. 321, 325 (1922).
But the question is whether state law now avoids overlapping coverage by sacrificing State benefits even if federal law does not require that sacrifice. Dicta in both the majority and the minority opinions in Plantation characterize the 1974 amendment to § 440.09(2) as an “additional step” in that direction,[6] or as an unambiguous bar of overlapping coverage.[7] Whatever may be the correct characterization of the statutory demarcation written in 1974, and wherever that abstract demarcation might be drawn in a given case by some ideal tribunal competent to decide all State and federal questions at a single stroke, a Florida deputy commissioner, not being such a tribunal, is not obliged to weigh the evidence of Jones Act coverage as liberally as a federal Jones Act judge or jury might, so to deny the Florida compensation claim. And since we likewise are not that perfectly sighted and multijurisdictional tribunal, we may affirm a deputy’s order, given a plausible basis for his doubting Jones Act coverage in fact, without worrying unduly whether, were we instead a federal court, we would extend Jones Act coverage to further the beneficial purposes of that law.[8] In other words, both the deputy and this court must be conceptually tidy on this subject, but we needn’t be perverse. It is enough for affirmance that substantial competent evidence supports the deputy’s view of things, whether the factual issue is Jones Act coverage or maximum medical improvement.[9]
So in this case we credit the deputy’s finding that Robert Barrett was not a “seaman” for Jones Act purposes because he was not “more or less permanently attached to the vessel.” Plantation, 342 So.2d at 72 and cases cited. The deputy here found:
The evidence shows that there were other occasions during which Mr. Barrett had worked on the Esmeralda at the request of his employer, both while the boat was principally docked in Fort Lauderdale as well as when it was permanently moved and docked in the Bahamas. These occasions were sporadic and Mr. Barrett did only minor repairs and would make arrangements to contract out any major repairs. The record is clear that there was no permanent crew on the boat and that Mr. Barrett was not permanently attached to the boat as a mate or otherwise. The record is further clear that Mr. Barrett’s primary duties were at the Ranch located in Florida .... The *996 claimant was clearly not a seaman for purposes of Jones Act coverage.
Substantial competent evidence supports the Florida deputy’s view of the Jones Act issue. We find no other error. The award is
AFFIRMED.
McCORD and ERVIN, JJ., concur.

.Our disposition of the case makes it unnecessary to inquire whether the 1974 Florida Legislature requires the deputy commissioner to find some plausible evidence of employer negligence before slamming the door against a Chapter 440 claim. Interpolating such a requirement in the state law would tend to reduce the chances of the worker’s claim falling between the two acts and into neither. But that sort of inquiry was not required when the jurisdictional question was the limits of federal jurisdiction rather than, as now, the extent of the State’s disclaimer. E. g., City of Plantation v. Roberts, 342 So.2d 69 (Fla. 1976).

. A. Larson, Workmen’s Compensation Law, § 90.41 (1981).

. Id. at § 90.30.

. Id. at § 90.41.

. So characterized by Mr. Justice England in behalf of the Plantation dissenters who found in the “navigable waters” requirement of the Longshoremen’s Act, and in interpretative Florida Supreme Court decisions, “a precise line of demarcation between the state and federal spheres .... ” 342 So.2d 75, 76 (dissenting opinion).

. 342 So.2d at 72, n.5 (majority opinion).

. 342 So.2d at 75, n.5 (minority opinion).

. E. g., Bernardo v. Bethlehem Steel Co., 200 F.Supp. 534 (S.D.N.Y.1961), aff'd, 314 F.2d 604 (2d Cir. 1963); Senko v. LaCrosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957); Offshore Co. v. Robison, 266 F.2d 769 (5th Cir. 1959).

.Cf. A. Larson, supra n.2, at § 90.41, speaking of the federal constraints on overlapping coverage:
But, apart from such one-sided cases, the best approach would seem to be to allow the trier of fact the same kind of broad discretion as in the longshoremen’s conflicts cases, within the broadest interpretation of the doctrine of local concern, and with a minimum of interference by appellate courts as long as errors of law are avoided.