Joseph Daniel **BROCKINGTON**, et al.,
Plaintiffs–Appellants,

v.

**CERTIFIED ELECTRIC, INC.**, Gerald
Raine, Defendants–Appellees.

No. 89–8373.

United States Court of Appeals,
Eleventh Circuit.

June 26, 1990.

Edward E. Boshears, Brunswick, Ga., for plaintiffs-appellants.

John T. Woodall, Marvin W. McGahee, Savannah, Ga., for Gerald Raine.

Douglas M. Muller, Robert S. Glenn, Jr., Hunter MaClean Exley & Dunn, P.C., Savannah, Ga., for Certified Elec., Inc.

Before TJOFLAT, Chief Judge, VANCE\*, Circuit Judge, and ALLGOOD\*\*, Senior District Judge.

PER CURIAM:

We affirm the district court's summary judgment in favor of appellee Certified Electric, Inc. for the reasons stated in the relevant portion of its April 18, 1989 order

---

\* Judge Robert S. Vance was a member of the panel that heard oral argument but due to his death on December 16, 1989 did not participate in this decision. This case is decided by a quorum. *See* 28 U.S.C. § 46(d).

\*\* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

set out in the appendix. We affirm the court's summary judgment in favor of appellee Gerald Raine because no genuine issue of material fact exists and under the applicable law appellants are entitled to no relief. *See* 11th Cir.R. 36-1.

## APPENDIX

## ORDER

ALAIMO, Chief District Judge:

Joseph Daniel Brockington and Sylvia, his wife, bring this action to recover damages for an injury sustained by Brockington on the "navigable" waters of the Intracoastal Waterway in the course of his employment with Certified Electric, Inc. ("Certified"). Brockington, who has already received compensation for his injury pursuant to the Georgia Workers' Compensation Act, O.C.G.A. § 34-9-1, *et seq.*, now seeks an independent recovery against Certified as his employer, pursuant to section 5(b) of the federal Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, and general maritime law....

Now before the Court [is] Certified's ... motion[] for summary judgment. The Court finds that the material facts are not in dispute with respect to Certified's position and that it is entitled to judgment pursuant to both the LHWCA and general maritime law. Accordingly, Certified's motion for summary judgment will be granted....

## FACTS

Joseph Daniel Brockington lived in Brunswick, Georgia, and in May 1985, had been employed as a land-based journeyman electrician by Certified (also located in Brunswick) since 1975. His duties primarily consisted of wiring houses and commercial and industrial buildings. In connection with these duties, he also dug ditches, ran conduit, pulled cable and wired electrical fixtures.

The incident which forms the basis for this action took place on May 15, 1985. Certified had contracted with the University of Georgia to do wiring work at a marine laboratory which was being built on Sapelo Island, off the coast of Georgia. The lab was being built entirely upon the land. Because there is no bridge to the island, it was necessary for the workers to travel to the island aboard the "Sapelo Queen" ferry. Workers had encountered difficulties because the ferry made only a limited number of trips back and forth, thereby limiting their access to the island and to their materials and equipment. For this reason, David Ferrell, also an electrician with Certified, suggested using his own 16–foot motorboat to transport materials to the island. Certified gave Ferrell permission to do so and agreed to reimburse him for gas, oil and dockage fees. Although Ferrell had made the trip prior to May 15, 1985, Brockington was making the trip for the first time.

According to Brockington, he met Ferrell at approximately 7:30 a.m. on May 15, 1985, at Ferrell's home in Darien, Georgia. They proceeded, with Ferrell's boat, to the marina where they loaded it with the supplies and equipment they would need on Sapelo. Ferrell maintains, however, that they met at the marina where the boat was already located. At any rate, after loading the boat, they proceeded to Sapelo Island; Ferrell operated the boat while Brockington, who states that he looked at the electrical plans and checked the tools on the way over, acted as a passenger. While Brockington states that they left the dock at approximately 8:00 a.m., Ferrell recalls leaving sometime between 8:30 and 8:45 a.m.

At this point, the versions of the facts begin to differ in material respects. While Ferrell recalls that the incident which forms the basis for this lawsuit occurred on the way to Sapelo, Brockington maintains that they had already been to the island, unloaded materials and were on their way back to the marina to get more supplies when the incident took place. Ferrell states that it occurred as his boat entered the Intracoastal Waterway from an intersecting river and unexpectedly encountered a wake of approximately four feet, caused by a larger passing vessel which he had been unable to see prior to entering the

Waterway because a curve in the river obstructed his view. When Ferrell's boat, which was traveling at approximately 20–25 m.p.h., hit the wake, the seat upon which Brockington was sitting became unfastened and slid to the back of the boat, apparently causing Brockington to fall. Ferrell states that, at approximately the same time his boat hit the wake, he looked to his left and saw the back of a yacht (the only boat in sight) approximately 100–150 yards away. The only thing he noticed was that one person was on the very top of the boat.

Brockington's recollection of the accident is somewhat different. He states that Ferrell's boat met the cabin cruiser head-on. To avoid a collision, Ferrell maneuvered his boat to the left and the larger boat passed on their right side. According to Brockington, when the boats were approximately even, Ferrell made a 90–degree turn directly into its wake. It was at that point that Brockington's seat became unfastened and slid to the back of the boat. Although he did not notice its name or any other identifying marks, Brockington recalls seeing two people on the second deck of the cabin cruiser, which he later identified as being nearly identical to a diagram of a Viking motor yacht.

Ferrell's and Brockington's recollection of the facts converge once again following the accident. Complaining of back pain, Brockington requested that they return to the marina. Upon their arrival, he informed his employer that he was unable to continue working and returned home to Brunswick. Brockington has not returned to work since then.

According to their log, Gerald Raine and his wife left the Golden Isles Marina in St. Simons Island, Georgia, aboard their yacht, the "Empty Pockets III," at approximately 9:30 a.m. on May 15, 1985, and proceeded north on the Intracoastal Waterway. They arrived at the Thunderbolt Marina in Thunderbolt, Georgia, at 2:45 p.m. That 93–mile leg of their journey from Fort Lauderdale, Florida, to the Chesapeake Bay was made at an average speed of 17.7 m.p.h. Although plaintiffs contend that the "Empty Pockets III" was the only boat of its kind which would have been in the vicinity of the incident at the time it occurred, neither Raine nor his wife recalls anything unusual about their journey that day, and maintain that they were traveling too slowly to have been in the area at the time of the incident.

Following the accident, Brockington applied for and initially received approximately $46,000 in state worker's compensation benefits, consisting of about $26,000 in medical benefits related primarily to back surgery he underwent as a result of the injury he sustained in his fall, and $19,000–$20,000 in compensation benefits. Certified and its insurance carrier brought a separate proceeding to contest the amount of benefits Brockington was receiving because of his perceived lack of cooperation with rehabilitation therapists. In final settlement of Brockington's claims, Certified and the insurer agreed to pay him an additional $40,000 plus open medical expenses for a period of one year.

DISCUSSION

Plaintiffs originally invoked federal jurisdiction of their action, contending that Brockington was a "maritime employee," entitled to recover pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* Whether plaintiffs continue to argue this is unclear, but irrelevant, given the Court's determination, *infra,* that Brockington is not entitled to coverage under the LHWCA. Plaintiffs also invoke the admiralty jurisdiction of the Court for their claim under general maritime law.

Certified moves for summary judgment, arguing, first, that Brockington was not a "maritime employee" for purposes of the Act. Certified argues further that this claim is not cognizable under the Court's general maritime jurisdiction but that, even if it were, plaintiffs' claims are barred because they have already been compensated under the exclusive provisions of the Georgia Workers' Compensation Act.

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is

entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142, 152 (1970). Summary judgment is also proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986).

The Court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the nonmovant. *Adickes,* 398 U.S. at 158–59, 90 S.Ct. at 1608–09, 26 L.Ed.2d at 155.

**(A) LHWCA**

■ Plaintiffs originally brought this action under the LHWCA and, while they now appear willing to stipulate that the LHWCA does not apply, it is not entirely clear whether they have dropped their claim under it. Moreover, defendants argue that, if plaintiffs' claims are cognizable under the Court's maritime jurisdiction, the LHWCA would correctly be applicable as plaintiffs' exclusive remedy. Because the Court finds that Brockington was not a "maritime employee" at the time he was injured, he is not entitled to proceed under the LHWCA.

The LHWCA, originally enacted in 1927, was amended in 1972. The effect of the 1972 amendments was to expand coverage of the Act to include longshoremen, harborworkers and others who were not actually physically on the water at the time of their injury. Where, prior to 1972, the LHWCA:

reached only accidents occurring on navigable waters, the amended [Act] expressly extended coverage to "adjoining area[s]." At the same time, the amended definition of an "employee" limited coverage to employees engaged in "maritime employment."

*Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 420, 105 S.Ct. 1421, 1425, 84 L.Ed.2d 406

(1985). The rationale underlying the amendments was that such employees, regularly exposed to the type of risks intended to be protected by the LHWCA, should not be foreclosed from recovery merely because they happened to be performing their duties on land at the moment of their injury. Section two of the LHWCA was amended in 1984 to further clarify the definition of covered employees; specifically excluded were certain categories of workers not engaged in maritime occupations or exposed to classic maritime hazards. The 1984 amendments were intended to:

insure stability for both the employer and the employee. The employer needs to know its obligations with respect to workers' compensation for its employees, and make plans accordingly. Employees should not fall within the coverage of different statutes because of the nature of what it is that they were doing at the moment of injury.

H.R.Rep. No. 570, 98th Cong., 2d Sess., Pt. 1, at 6, *reprinted in* 1984 U.S.Code Cong. & Admin.News 2734, 2739.

These amendments have been interpreted to require persons bringing claims under the Act to fulfill a two-prong test consisting of a "status" as well as a "situs" component. The fact that Brockington suffered some injury on the "navigable waters" of the Intracoastal Waterway has never been disputed; thus, there is no need to dwell on the issue of situs. The real question is whether Brockington fulfills the second prong, which concerns "status" of the injured party.

The Supreme Court most recently addressed the question of "status" in *Herb's Welding, Inc. v. Gray, supra*, stating that the injured party must be engaged in "maritime employment." In denying LHWCA coverage to a welder injured on a fixed offshore oil-drilling platform, the Court focused on an "occupational test," stating that:

[t]he Amendments were not meant "to cover employees who are not engaged in loading, unloading, repairing, or building a vessel, just because they are injured in

an area adjoining navigable waters used for such activity.

*Id.* at 424, 105 S.Ct. at 1427, *citing* H.R. Rep. No. 92–1441, p. 11 (1972), U.S.Code Cong. & Admin.News 1972, pp. 4698, 4708. S.Rep. No. 92–1125, p. 13 (1972). In holding that the welder did not fulfill the "status" requirement of the LHWCA, the Court found that there was nothing "inherently maritime" about the tasks he performed; that "their nature was not significantly altered by the marine environment"; and that, in fact, "welding work was far removed from traditional LHWCA activities." *Id.* at 425, 105 S.Ct. at 1428. Although the Court declined to address the question of coverage by the LHWCA of an employee whose job was entirely land-based but who took a boat to work, *id.* at 427 n. 13, 105 S.Ct. at 1429 n. 13, this Court finds sufficient guidance to be able to answer that question given the facts of the present action.

The question which must be answered is whether, at the time of his injury, Brockington was engaged in maritime employment sufficient to fulfill the "status" requirement. In order to answer this question, one must determine whether "employment" is defined by what he was doing at the *moment* he was injured, *or* whether it is defined by the nature of employment in which he was *generally* engaged. This question was addressed by the Supreme Court in *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977), where it held that the question of whether an individual is a maritime employee for purposes of LHWCA coverage is controlled by analysis of his "basic" employment, rather than the employee's particular work at the moment of the accident. Therefore, Brockington's argument that he "loaded and unloaded" materials from the boat at the time of his injury is largely irrelevant.[1] What matters to a determination of maritime status is the description of his *regular* employment.

The undisputed facts indicate that Brockington was employed by Certified as a land-based electrician. His duties consisted primarily of wiring houses and commercial buildings. Brockington had no connection to traditional "loading and unloading" activity in the course of his employment with Certified or at any other time. There was nothing inherently maritime about his tasks as an electrician, and the "marine environment" in which he was injured had absolutely no connection to the general nature of his employment. It was merely his mode of travel to this particular jobsite. Furthermore, it cannot even be said that Brockington regularly traveled over water to more than two jobsites in the ten years he was employed by Certified. His only connection with the water was the fact that he happened to be traveling over it *incidental* to land-based employment.

Although Brockington was injured on navigable waters, he was not in any sense engaged in loading, unloading, repairing or building a vessel, and his *de minimis* connection to maritime activity is simply insufficient to fulfill the "status" requirement of the LHWCA. Consequently, Certified's motion for summary judgment on plaintiffs' claim under the LHWCA will be granted.

(B) General Maritime Law

(1) Jurisdiction

Federal courts have been given jurisdiction over claims in admiralty in recognition of the important national interest of fostering "uniformity of law and remedies for those facing the hazards of waterbourne transportation." *Kelly v. Smith,* 485 F.2d 520, 526 (5th Cir.1973).

To invoke the admiralty jurisdiction of the federal courts in a personal injury action, the situs of the injury is important; however, jurisdiction depends upon more than the mere fact that the accident occurred on the "high seas or navigable waters." *See East River S.S. Corp. v. Transamerica Delaval,* 476 U.S. 858, 864, 106

---

**1.** The Court in *Herb's Welding, Inc. v. Gray, supra* 470 U.S. at 425, 105 S.Ct. at 1428, held such activity to be "far removed from traditional LHWCA activities."

S.Ct. 2295, 2298, 90 L.Ed.2d 865 (1986). While there is no dispute that the incident which forms the basis for this action took place on navigable waters, fulfilling this jurisdictional situs requirement, an additional requirement dictates that a federal court may properly exercise such jurisdiction over an action only when there is also a "significant relationship" between the alleged wrong and "traditional maritime activity." *Id., citing Executive Jet Aviation, Inc. v. Cleveland,* 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). While this requirement is not as stringent as the "maritime employment" requirement of the LHWCA, there must be some nexus between the activity and the concerns intended to be protected through the grant of admiralty jurisdiction.

■ The court in *Kelly* set forth four factors which should be taken into consideration to determine whether the requisite relationship exists: (1) the functions and roles of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and type of injury; and (4) the traditional concepts of the role of admiralty law. *Id.* at 525. Analyzing the present action in terms of these factors, the Court is convinced that it properly retains jurisdiction.

At the time of the incident, Brockington and Ferrell were functioning, respectively, as passenger and operator of a 16–foot boat and were in the process of motoring between mainland Georgia and Sapelo Island, Georgia. The injury was caused when Ferrell's smaller boat hit a large wake left by a 42–foot yacht (allegedly operated by Gerald Raine). The resulting jolt caused the chair upon which Brockington was seated to become unfastened and slide to the back of the boat. Knocked off balance, Brockington fell and hurt his back.

The circumstances under which Brockington was injured are exactly the type contemplated as being the particular hazard of traveling upon the water and clearly within the purview of the traditional role of admiralty law. Because the facts of the present action meet the "substantial relationship" test as set forth in *Kelly,* the Court properly retains jurisdiction under general maritime law.

(2) The Law

Having determined that this action is properly within the Court's admiralty jurisdiction, we now turn to the question of what law to apply. Plaintiffs argue that general maritime law will apply to their tort claims against Certified based upon the doctrine of *respondeat superior.* Certified, on the other hand, maintains that recovery by plaintiffs under general maritime law is proscribed because Brockington, who had contracted for employment pursuant to the Georgia Workers' Compensation Act, O.C.G.A. § 34–9–1 *et seq.,* has already been compensated under its exclusive provisions.

■ The general rule is that with admiralty comes the application of substantive admiralty law and, absent a relevant statute, the general maritime law,[2] as developed by the judiciary, will apply. *East River S.S. Corp. v. Transamerica Delaval, supra* 476 U.S. at 864, 106 S.Ct. at 2298 (citations omitted). As is the case with most general rules, there are exceptions to the usual supremacy of federal maritime law. In fact, the Supreme Court pointed out that "the claim of federal supremacy [in admiralty cases] is adequately served by the availability of a federal forum in the first instance and of review in this Court to provide assurance that the federal interest is correctly assessed and accorded due weight."[3] *Kossick v. United Fruit Co.,*

**2.** Ostensibly a "uniform" body of law, the "general maritime law" is drawn from both state and federal sources and is an "amalgam of traditional common-law rules, modifications of those rules, and newly created rules" which includes a "body of maritime tort principles." *East River S.S. v. Transamerica Delaval, supra* at 865, 106 S.Ct. at 2299.

**3.** According to Judge Hand, writing for the court in *Newburgh Land & Dock Co. v. Texas Co.,* 227 F.2d 732, 734 (2d Cir.1955), "exceptions to the paramountcy of the maritime law have always been recognized."

365 U.S. 731, 739, 81 S.Ct. 886, 892, 6 L.Ed.2d 56 (1961). Consequently, federal courts sitting in admiralty should, according to the dictates of comity, acknowledge and protect state-created rights, even at times to the exclusion of an existing maritime law.

■ In order to determine whether to give effect to a state law to the exclusion of a conflicting admiralty law, courts have generally used a balancing approach. In *Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1488 (11th Cir.1986), the court suggested the following method for resolving such conflicts:

> One must identify the state law involved and determine whether there is an admiralty principle with which the state law conflicts, and, if there is no such admiralty principle, consideration must be given to whether such an admiralty rule should be fashioned. If none is to be fashioned, the state rule should be followed.... *If there is a[n] admiralty-state law conflict, the comparative interests must be considered* —they may be such that admiralty shall prevail ... or if the policy underlying the admiralty rule is not strong and the effect on admiralty is minimal, the state law may be given effect....

Emphasis added (citations omitted).

Such a conflict has arisen in the present personal injury action. Plaintiffs urge the Court to apply general maritime law, in which actions for personal injury are generally cognizable. The provisions of Brockington's employment contract, incorporating Georgia worker's compensation law, would operate, on the other hand, to preclude this action. The Georgia law provides:

> The rights and remedies granted to an employee by this Chapter shall *exclude all other rights and remedies* of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death....

O.C.G.A. § 34–9–11 (emphasis added). The evident conflict compels the Court to apply the *Steelmet* balancing analysis to take into consideration the comparative interests in applying one body of law over the other.

An initial analysis indicates that the driving consideration underlying the preference for application of federal maritime law in admiralty cases is promotion of uniformity in that body of law. *See, e.g., Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); *but see Exxon Corp. v. Chick Kam Choo*, 817 F.2d 307, 317–18 (5th Cir.1987), *rev'd on other grounds*, 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988) (uniformity, not an end in itself, otherwise state law would *always* be preempted). The second consideration involves protection of statutorily or judicially created federal rights. *See Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (establishing wrongful-death action in general maritime law); *East River S.S. v. Transamerica Delaval, supra* (establishing products liability action in general maritime law). A final, increasingly insignificant, consideration is the traditional inclination to allow plaintiffs to prevail in personal injury or wrongful-death maritime tort claims. *See Exxon Corp. v. Chick Kam Choo, id.* at 318.

Countervailing state interests include the interest in being permitted to regulate independently matters of local concern without interference by the federal government, *see Askew v. American Waterways Operators*, 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973) (state law will not be preempted when the law regulates behavior in which the state has an especially strong interest; for example, police power), and in having state-created rights and obligations protected and enforced in actions in federal court. *See Just v. Chambers*, 312 U.S. 383, 388, 61 S.Ct. 687, 85 L.Ed. 903 (1941).

### (a) General Maritime Law

In light of these considerations, plaintiffs maintain that general maritime law should be applied. They argue that the federal

judiciary has established a policy of applying general maritime law over state worker's compensation law in admiralty actions; to do otherwise would result in the disturbance of uniformity.

While it is well established that state law must "'yield to the needs of a uniform federal maritime system when inroads by the state cause disharmony,'" *Thibodaux v. Atlantic Richfield Co.*, 580 F.2d 841, 847 (5th Cir.1978), *citing Romero v. International Terminal Operating Co.*, 358 U.S. 354, 373, 79 S.Ct. 468, 480, 3 L.Ed.2d 368 (1959), it is also recognized that uniformity simply for the sake of uniformity serves no inherent good. *See Exxon Corp. v. Chick Kam Choo, supra.*

In support of plaintiffs' argument that the limitations of the workers' compensation law should not be given effect in this admiralty action, they cite the Fifth Circuit decisions of *Thibodaux v. Atlantic Richfield Co.*,[4] *King v. Universal Electric Constr.*,[5] *Roberts v. City of Plantation*[6] and *Brown v. ITT Rayonier, Inc.*[7]

These admiralty cases, similar to the present action in some respects, are distinguishable. Both *Thibodaux* and *King* involved actions for wrongful death by widows of employees who were killed while working on navigable water. Although the decedents were not Jones Act seamen or longshoremen, the courts held that, under *Moragne*, the exclusive remedy of the Louisiana worker's compensation statute was preempted by federal maritime law to permit action for wrongful death. In *Roberts,* the court reversed the district court's dismissal of an action by a city policeman who was injured by a "fusillade of coconuts" thrown at him by "young hooligans" as he patrolled a canal in a city vessel. The court stated that, if he could show himself

4. 580 F.2d 841, 847 (5th Cir.1978).

5. 799 F.2d 1073 (5th Cir.1986).

6. 558 F.2d 750 (5th Cir.1977).

7. 497 F.2d 234 (5th Cir.1974).

8. Stressing the need for uniformity in light of the discrepancies resulting from judicial attempts to accommodate state wrongful death

entitled to a maritime remedy under the Jones Act, the worker's compensation statutes would not apply. The Court in the present action has already determined that plaintiffs are not entitled to a remedy under a federal maritime statute. Finally, while the court in *Brown* did, indeed, disregard the state worker's compensation statute in favor of permitting an action in general maritime law, it is distinguishable in the sense that recovery was based not upon negligence but, rather, upon a claim of unseaworthiness, a right peculiar to the law of admiralty. *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). A critical fact distinguishes those cases from the case presently before the Court: while they involve tort actions for negligence, they are not actions for personal injury but for wrongful death, for which the Supreme Court specifically created a cause of action in general maritime law.[8]

Analysis of the decisions indicates that the Louisiana worker's compensation statute at issue in each of the cases would have operated to prevent any recovery for wrongful death, in direct contravention of the Court's intention, as stated in *Moragne*, to establish the right to such a recovery. Such a result would intrude upon the uniformity of the general maritime law and additionally violate the general policy of permitting recovery by plaintiffs.

Applying the Georgia worker's compensation statute to the present action implicates none of the same concerns. First, while maritime law generally permits recovery for personal injury as a maritime tort, the Supreme Court has stated that:

> the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile

remedies, the Supreme Court specifically declared that "an action does lie under general maritime law for death caused by violation of maritime duties," *see Moragne v. States Marine Lines, supra* 398 U.S. at 409, 90 S.Ct. at 1792, thereby establishing a uniform policy to be followed by all federal courts hearing cases in admiralty.

to the characteristic features of maritime law or inconsistent with federal legislation.

*Just v. Chambers, supra* (enforcing a state survival of actions statute) (citations omitted); *see also Baggett v. Richardson,* 473 F.2d 863 (5th Cir.1973) (state tort law dealing with assault and battery and *respondeat superior* applied in admiralty action). Further, although the Court has encountered similar personal injury actions in admiralty, plaintiffs have pointed to no instances in which the Court has taken it upon itself to proscribe application of worker's compensation statutes in favor of general maritime law. To the contrary, the Supreme Court has given effect to state law to the exclusion of general maritime law. In *P.J. Carlin Const. Co. v. Heaney,* 299 U.S. 41, 57 S.Ct. 75, 81 L.Ed. 27 (1936), a construction worker was seriously injured when a violent explosion wrecked the ferry upon which he was traveling to an island jobsite. The Court ruled that the employment contract, providing for coverage under the New York worker's compensation laws, must be given effect because the parties and the accident were local; the contract had no direct relation to navigation; and to enforce it against the parties would not "materially interfere with the uniformity of any maritime rule." *Id.* at 44, 57 S.Ct. at 76. *See also Grant Smith–Porter Ship Company v. Rohde,* 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922); *Miller's Indemnity Underwriters v. Braud,* 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470 (1926); *Alaska Packers Association v. Industrial Accident Commission,* 276 U.S. 467, 48 S.Ct. 346, 72 L.Ed. 656 (1928). It can hardly be argued that uniformity considerations would be implicated where there appears to be no uniform rule and, in admiralty cases where a rule of admiralty did not require uniformity, state laws have been accepted as the rules of decision. *See* S. Friedell, *Benedict on Admiralty, Jurisdiction* § 105 (7th rev. ed. 1988). Finally, unlike the statute with regard to an action for wrongful death, recovery for personal injury is not proscribed by the Georgia worker's compensation law but, rather, is *specifically* provided. Brockington, who has already recovered more than $85,000 under the statute, has not been left without a remedy.

### (b) State Law

While the interest in applying general maritime law to the present action is not substantial, the interest in applying state law is relatively high.

First, the action is peculiarly "local." The plaintiffs are local residents and Certified is a local operation. The accident occurred within state waters—as Brockington traveled between the Georgia mainland and Sapelo Island, one of Georgia's barrier islands. Moreover, Brockington contracted for employment pursuant to state law, with the expectation that the Georgia worker's compensation laws would apply. Certified, likewise, acted according to the same expectation. Under nearly identical circumstances, the court in *P.J. Carlin Const. Co. v. Heaney, supra,* refused to interfere with application of the worker's compensation laws to a "local" action. *See also Palestina v. Fernandez,* 701 F.2d 438, 439 (5th Cir.1983) (although the case for negligence was in the court's admiralty jurisdiction, "in all other respects ... it [was] a garden variety state tort claim" in which it was appropriate to apply state law). Similarly, application of state law would result in no interference with federal maritime policy given the absence of conflicting statutory provisions and the lack of explicit support for a cause of action under these circumstances.

Furthermore, the state has a substantial interest in having its worker's compensation laws applied. Enactment of the Georgia Workers' Compensation Act, O.C.G.A. § 34–9–1, *et seq.,* was intended by the Legislature to provide a means by which an employee and employer could, if they chose:

escape entirely from ... "personal injury litigation," through a system by which every employee not guilty of willful misconduct [could] obtain at once a reasonable recompense for injuries accidentally received in his employment, without lawsuit and without friction.

*Brown v. Lumbermen's Mut. Casualty Co.*, 49 Ga.App. 99, 101, 174 S.E. 359 (1934). It has resulted in benefit for employees and employers alike. At the same time, it provides relief for injured employees through facilitation of "speedy, inexpensive, and final settlement of claims of injured employees." *Continental Casualty Co. v. Caldwell*, 55 Ga.App. 17, 18, 189 S.E. 408 (1937). It also protects employers from potentially excessive awards, *see Samuel v. Baitcher*, 247 Ga. 71, 73, 274 S.E.2d 327 (1981), and from further liability outside the Act. *See United States v. Aretz*, 248 Ga. 19, 20, 280 S.E.2d 345 (1981); O.C.G.A. § 34-9-11. To foreclose operation of this statute in favor of application of maritime law would result in introduction of the very uncertainty sought to be avoided by parties who contract pursuant to the Act. Unable to anticipate all the other potential bases for recovery, an employer would avoid contracting pursuant to a statute which would hold it to its responsibilities but not provide the bargained-for protections.

Having considered the competing interests surrounding the present action, the Court finds that the state has a strong interest in application of its worker's compensation law with no comparable interest to tip the balance in favor of application of general maritime law. Because Brockington has recovered under the statute, the exclusivity provision precludes any further recovery and Certified's motion for summary judgment will be granted.

. . . .

CONCLUSION

Because Brockington lacks the characteristics of a "maritime employee" such that he would qualify for coverage under the LHWCA, Certified's motion for summary judgment on plaintiffs' claim under the LHWCA is GRANTED. Likewise, Certified's motion for summary judgment with respect to plaintiffs' claim under general maritime law is GRANTED because the Georgia worker's compensation law operates to exclude any other recovery. The Clerk of Court is directed to enter an appropriate judgment on behalf of Certified Electric, Inc.