726 So.2d 778 (1998)
FCCI FUND (FEISCO), Appellant,
v.
CAYCE'S EXCAVATION, INC. and Russel Riker, Appellees.
No. 97-3315
District Court of Appeal of Florida, First District.
October 15, 1998.
*779 H. George Kagan and Elliot B. Kula of Miller, Kagan, Rodriguez & Silver, P.A., West Palm Beach, for Appellant.
Jay M. Levy, Miami; Eric Bredemeyer, Miami; and Howard N. Pelzner, Miami, for Appellees.
BENTON, Judge.
We have for review an order awarding workers' compensation benefits to Russel Riker, who was working on a barge afloat on navigable waters when he was injured. Reversing when this case was last before the courton grounds "the judge of compensation claims erred in concluding that subject matter jurisdiction could be conferred by ... estoppel," FCCI Mutual Insurance v. Cayce's Excavation, Inc., 675 So.2d 1028, 1029 (Fla. 1st DCA 1996)we remanded for "findings on the issue of whether Riker's exclusive remedy is under the LHWCA [Longshore and Harbor Workers' Compensation Act, §§ 1 et seq., 33 U.S.C. §§ 901 et seq.]."Id. at 1030. On remand, the judge of compensation claims again concluded she had jurisdiction to decide Mr. Riker's claim. We now reverse the order entered on remand.

I
The order under review recited the facts surrounding the accident as found in the original proceeding:
In [a previous order], which was the subject of the prior appeal, this Court found the Claimant's accident occurred as follows:
... Mr. Riker was injured in an accident on the Employer's barge, which was working in the residential canal adjoining a house under construction.... The barge had been brought in as a work platform to install eight pilings for a [residential] dock structure that would be parallel and straddle the canal's edge.... The piling which involved the injury was on the outer of two rows of four pilings each. The outer row was the row further from the land, and at that, only a few feet from land. This residential canal goes into the [G]ulf of Mexico.... Mr. Riker, while on the barge, was engaged in a measuring procedure lining up with the land when he lost his balance. He reached out with his right hand and grabbed the drill rig which crushed his hand.
There is no dispute between the parties that this accident occurred on navigable waters a few feet from the land.
(Footnote omitted.) At issue here are not these undisputed findings, but legal questions of statutory coverage.

II
The first state workers' compensation laws were enacted "with the expectation that their applicability would extend beyond the water's edge." City of Plantation v. Roberts, 342 So.2d 69, 73 (Fla.1976). But the United States Supreme Court saw such laws as a "threat to shipping ... [because of] the sheer number of laws to which ships, especially coastwise vessels, could be subjected." Id. The Court decided in Southern Pacific Co. v. Jensen, 244 U.S. 205, 218, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), that New York's workers' compensation statute, insofar as applicable in situations which could give rise to claims within the admiralty jurisdiction of the federal courts,[1] "conflicts with the Constitution and to that extent is invalid."
*780 Congress responded with legislation authorizing states to extend workers' compensation coverage to maritime accidents. But the Court declared this unconstitutional in Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920). A second congressional statutory amendment to allow state workers' compensation laws to apply to maritime workers on the waterfront, excepting only vessels' masters and crews, was also struck down. See Washington v. W.C. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924).
Congress then enacted the Longshoremen's and Harbor Workers' Compensation Act, § (3)(a), 44 Stat. 1424 (1927) (codified as 33 U.S.C. § 903(a)) (LHWCA), creating a federal workers' compensation scheme to cover workers on navigable waters "if recovery... through workmen's compensation proceedings may not validly be provided by state law." But see Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). See generally F. Nash Bilisoly, The Relationship of Status and Damages in Maritime Personal Injury Cases, 72 Tul. L.Rev. 493, 515-16 (1997).

III
As a matter of state law, coverage under the LHWCA precludes coverage under Florida's Workers' Compensation Law. We so held most recently in evaluating a waterfront employer's claim of immunity to suit in tort in Babin v. North Florida Shipyards, Inc., 705 So.2d 66, 23 Fla. L. Weekly D125, D126 (Fla. 1st DCA Dec.31, 1997), modified on other grounds, 709 So.2d 657 (Fla. 1st DCA 1998):
In fact, section 440.09(2), Florida Statutes, expressly precludes receipt of Florida workers' compensation benefits when circumstances dictate that LHWCA benefits apply. This provision states:
(2) Benefits are not payable in respect of the disability or death of any employee covered by the Federal Employer's Liability Act, the Longshoremen's and Harbor Worker's Compensation Act, or the Jones Act.
See Roberts, 342 So.2d at 72 n. 4 (dicta); Smart v. Marathon Seafood, 444 So.2d 48, 52 (Fla. 1st DCA 1983) (reversing deputy commissioner's finding that the LHWCA precluded recovery under the Workers' Compensation Law on grounds the LHWCA did not apply on the facts presented).
Earlier, in Hernandez v. Mike Cruz Machine Shop, 389 So.2d 1251, 1252-53 (Fla. 1st DCA 1980), we read section 440.09(2) as ousting state workers' compensation jurisdiction whenever coverage was available under the LHWCA:
In the case at bar, the injury occurred upon navigable waters.... Additionally, the claimant was engaged in maritime employment.... Thus, the claimant is an "employee" under the [LHWCA], and the disability at issue is within the coverage of the [LHWCA]. Accordingly, the Deputy had no jurisdiction to enter his Order....
Florida law makes coverage under the federal act the question on which the jurisdiction of the judge of compensation claims depends in the present case.

IV
We turn now to the question whether the LHWCA provides coverage on the facts found below. In the wake of the 1972 amendments to the LHWCA, several lower federal courts concluded that the LHWCA covered an employee injured on navigable waters only if the employee was engaged in maritime employment defined as loading, unloading, repairing, dismantling, or building a vessel.[2]See Churchill v. Perini North River *781 Assocs., 652 F.2d 255, 258 (2d Cir.1981); Fusco v. Perini North River Assocs., 622 F.2d 1111, 1113 (2d Cir.1980); Weyerhaeuser Co. v. Gilmore, 528 F.2d 957, 960-61 (9th Cir.1975). But see Boudreaux v. American Workover, Inc., 680 F.2d 1034, 1038-39 (5th Cir.1982) (stating that the 1972 definition of maritime employment includes all employment on navigable waters). The United States Supreme Court granted certiorari in Churchill to resolve the issue
whether a marine construction worker, who was injured while performing his job upon actual navigable waters, and who would have been covered by the [LHWCA] before 1972, is "engaged in maritime employment" and thus covered by the amended [LHWCA].
Director, Office of Workers' Compensation Programs v. Perini North River Assocs., 459 U.S. 297, 299, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983) (footnote omitted).
Mr. Churchill, the employee in Perini, was a construction worker who was injured while working on a barge, helping lay the foundation for a sewage treatment plant. 459 U.S. at 300, 103 S.Ct. 634. The Second Circuit held that the LHWCA did not apply because his employment had no significant relationship to maritime activities, saying that an "employee injured upon the navigable waters in the course of his employment had to show that his employment possessed a direct (or substantial) relation to navigation or commerce in order to be covered." See id. at 318-19, 103 S.Ct. 634; see also Churchill v. Perini North River Assocs., 652 F.2d 255, 257-58 (2d Cir.1981). Reviewing this decision, the Court reversed. Acknowledging the 1972 amendments had created a new, two-pronged "situs" and "status" test (which limits coverage for injuries occurring on the landward side of the water's edge), the Court found no legislative intent to limit coverage for injuries that occurred while an employee was actually working[3] on the water. See 459 U.S. at 317-19, 103 S.Ct. 634.
Perini controls in the present case. Like Mr. Churchill, the employee who was injured *782 in Perini, Mr. Riker was injured while working on a barge afloat on navigable waters as a "maritime construction worker." Perini, 459 U.S. at 299, 103 S.Ct. 634. Mr. Riker was helping to build a dock which, although recreational, bears a closer relationship to maritime navigation or commerce than the structure Mr. Churchill was working on when he was injured. In both cases, the employee "was injured while performing his job upon actual navigable waters." Id. On these facts, Mr. Riker was covered by the LHWCA.

V
Although the boundary between Florida and federal jurisdiction over workers' compensation claims on the seaward side of the water's edge canin the absence of any "fortuity" issuebe ascertained relatively straightforwardly, we acknowledge that the situation on the landward side of the water's edge is different. The boundaries of the "federal zone" landward of the water's edge are necessarily imprecise. See 33 U.S.C. § 903(a) (zone includes navigable waters of the United States and any "other adjoining area"). At the edge of the zone, workers who meet the status prong under the LHWCA can move in and out of LHWCA coverage.
Not all employees working on land adjoining navigable waters do work related to the loading, unloading, scuttling, construction, or repair of ships. See Herb's Welding, Inc. v. Gray, 470 U.S. 414, 423-24, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985); P.C. Pfeiffer Co. v. Ford, 444 U.S. 69, 80, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979). Landward of the water's edge, LHWCA coverage does depend on whether the employee's work is maritime in the sense of pertaining to the loading, unloading, repairing, dismantling, or building of vessels. See id. at 79, 100 S.Ct. 328; Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 265-67, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977); see also George R. Alvey, Jr. & John O. Pieksen, Jr., Falling in and out of Coverage: Jurisprudential Legislating Eviscerates the Status Requirement of the Longshore and Harbor Workers' Compensation Act, 19 Tul. Mar. L.J. 227, 255-57 (1995).
Discussing the landward expansion of LHWCA coverage effected by the 1972 amendments, the Court noted in Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 722, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), that, insofar as federal law was concerned, coverage under the LHWCA supplements state workers' compensation coverage, rather than preempting such coverage. See id. at 720-22, 100 S.Ct. 2432. "Given that the pre-1972 [LHWCA] ran concurrently with state remedies in the `maritime but local' zone, it follows that the post-1972 expansion of the [LHWCA] landward would be concurrent as well." Id. at 720, 100 S.Ct. 2432.
Interpreting the LHWCA to cover employees injured while on navigable waters, regardless of the reach of state workers' compensation statutes, the Court explicitly approved overlapping coverage. It was partly in order to "avoid uncertainty as to the source, state or federal, of [the workers' compensation] remedy," Calbeck v. Travelers Insurance Co., 370 U.S. 114, 124, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), that the Court held that the LHWCA afforded coverage for injuries on navigable waters, even if a remedy was also available under a state compensation law deemed applicable under the maritime but local exception to the Jensen rule.[4]See id. at 126-27, 82 S.Ct. 1196.
*783 But for injuries that occur on the land, federal and soin Florida, under section 440.09(2)state subject matter jurisdiction now depend on highly fact-intensive determinations. "The line that circumscribes the jurisdictional compass of the LHWCA ... is no less vague than its counterpart in the Jensen era." Id. at 725, 100 S.Ct. 2432. In theory, competent substantial evidence could support both the decision of a judge of compensation claims that the LHWCA applies and a federal administrative law judge's decisionas to the same injured employeethat the LHWCA does not apply.[5] In such a scenario, an employee can end up without coverage under either the Workers' Compensation Law or the LHWCA.[6]

VI
To recapitulate, Florida's Workers' Compensation Law provides: "Benefits are not payable in respect of the disability ... of any employee covered by ... the Longshoremen's and Harbor Worker's Compensation Act...." § 440.09(2), Fla. Stat. (1991). Because Mr. Riker was injured while working on navigable waters, he was covered by the Longshore and Harbor Workers' Compensation Act, §§ 1 et seq., 33 U.S.C. §§ 901 et seq. This coverage precluded recovery under chapter 440, Florida Statutes (1991). The judge of compensation claims "had no jurisdiction to enter [any order awarding benefits]." Hernandez v. Mike Cruz Mach. Shop, 389 So.2d 1251, 1253 (Fla. 1st DCA 1980).
Reversed.
VAN NORTWICK and PADOVANO, JJ., concur.
NOTES
[1] The longshoreman whose widow was denied benefits in Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), met his death over water on a gangway linking a steamship with a pier. Id. at 208, 37 S.Ct. 524. The Court in effect prohibited state workers' compensation coverage seaward of the water's edge. See id. at 217-18, 37 S.Ct. 524; see also Bilisoly, infra, at 515 ("The Supreme Court ... had drawn a presumably bright line at the water's edge, past which a state compensation program could not apply."); Miranda Chu, Coverage Under the LHWCA, in The Longshore Textbook 53, 53 (David E. Cisek ed., 1993) ("The Supreme Court made a line of demarcation along the water's edge in [Jensen] when it ruled that state law could not be extended to cover injuries seaward of the water's edge.").
[2] Congress amended the LHWCA in 1972, see Pub.L. 92-576, 86 Stat. 1251 (1972) (codified at 33 U.S.C. §§ 901 et seq.), principally in order to afford coverage to maritime workers injured while on landor "extensions of land," as admiralty views piers. See Nacirema Operating Co. v. Johnson, 396 U.S. 212, 223-24, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969); Chu, supra, at 54 ("Coverage under the [LHWCA before its amendment in 1972] was literally determined by where the body fell.").

The amendments expanded the "federal zone" to include not only navigable waters but also "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a) (1973). The 1972 amendments also defined a covered employee as any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and shipbreaker. 33 U.S.C. § 902(b) (1973).
[3] After Perini, the United States Circuit Courts have held that persons injured on navigable waters are covered by the LHWCA in a wide variety of circumstances. See Randall v. Chevron U.S.A., 13 F.3d 888, 898 (5th Cir.1994); Zapata Haynie Corp. v. Barnard, 933 F.2d 256, 258 (4th Cir. 1991) (holding a pilot who flew over the ocean as a fish spotter was covered under the LHWCA); Fontenot v. AWI, Inc., 923 F.2d 1127, 1129-30 (5th Cir.1991) (holding coverage existed under the LHWCA for an oil field worker injured while getting a tool box from a crewboat); McCarthy v. The Bark Peking, 716 F.2d 130, 132-33 (2d Cir. 1983) (holding coverage existed for a seaport museum employee injured while painting a museum vessel exhibited as an artifact).

The federal circuit courts have divided over the limits of the doctrine explicated in Perini. The Eleventh Circuit has created an exception to Perini for employees injured while fortuitously or incidentally on the water. In Brockington v. Certified Electric, the employee, an electrician, was injured in a boating accident while on the way to a jobsite. See 903 F.2d 1523, 1525-26 (11 Cir. 1990). The court focused on the nature of the employee's regular employment and decided the LHWCA did not cover him. See id. at 1528. The court found that the employee's "only connection with the water was the fact that he happened to be traveling over it incidental to land-based employment." Id.
On the other hand, the Fifth Circuit has held that if an employee is injured on the water, coverage exists under the LHWCA. In Randall, the employee, a mechanic on an oil platform, drowned during an evacuation. See 13 F.3d at 891-92. Acknowledging that the employee was "injured while transiently or fortuitously upon actual navigable waters," id. at 897, the court found that the employee was covered by the LHWCA. See id. at 898. No federal court, however, has found that the LHWCA does not cover an employee injured on the water while performing duties that had to be discharged on the water.
[4] The jurisdictional line set out in Jensen grew blurred shortly after it was laid down, notably in Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 477, 42 S.Ct. 157, 66 L.Ed. 321 (1922). There a worker helping build a new ship afloat on navigable waters was allowed to recover under Oregon's workers' compensation statute. But see Great Lakes Dredge & Dock Co. v. Kierejewski, 261 U.S. 479, 43 S.Ct. 418, 67 L.Ed. 756 (1923) (holding widow of worker killed on board helping repair a scow moored in navigable waters could not recover). Rohde was allowed to recover on the theory that shipbuildingunlike ship repairis maritime but local. See Western Fuel Co. v. Garcia, 257 U.S. 233, 242, 42 S.Ct. 89, 66 L.Ed. 210 (1921) (upholding application of statute held not to "interfere with the proper harmony and uniformity of [the general maritime] law in its international and interstate relation"). The Court held that application of the statute "would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law." Rohde, 257 U.S. at 476, 42 S.Ct. 157.
[5] This may be viewed as the dark side of the "twilight zone" the Court discussed in Davis v. Department of Labor, 317 U.S. 249, 256, 63 S.Ct. 225, 87 L.Ed. 246 (1942).
[6] The Legislature could avoid this result by amending section 440.09(2), Florida Statutes (1997), to allow concurrent jurisdiction under the Workers' Compensation Law of claims cognizable under the LHWCA, and to allow an offset under the former for any payments made under the federal act. This seems to be the situation that obtains in every other coastal state except Louisiana. The Legislature might at least consider extending state coverage to the water's edge. "`The horns of the jurisdictional dilemma press as sharply on employers as on employees.' " Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 725, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980) (quoting Davis, 317 U.S. at 255, 63 S.Ct. 225).